## Day and others *vs.* Pool and others.

A purchaser of personal property to be delivered at a future day may, by *express contract*, relieve himself from the obligation to return the property on discovering its inferiority, and still hold the vendor responsible for the deficiency in quality.

He may do this by taking an *express* warranty, at the time of the purchase, that the goods, when delivered, shall possess the particular qualities which it is important for him to secure.

The cases of *Hargous* v. *Stone*, (5 *N. Y.* 73,) and *Reed* v. *Randall*, (29 *id.* 358,) expressly recognize the right of a vendee, upon an executory sale, to protect himself against the contingency of being obliged to use, at his own risk and loss, an inferior article or to be deprived of it altogether, when to attempt to supply its place might be attended with great inconvenience and loss. That the mode of effecting this object is by exacting an express warranty. And that in such a case, the doctrine of warranty applies, at the option of the vendee, to the same extent as if it were an executed sale; in which latter case, it is well settled that the vendee is under no obligation to return the property on ascertaining that it does not fulfill the warranty, but may keep it, and rely on the warranty for redress.

The plaintiffs on purchasing from the defendants 80 barrels of rock candy syrup, to be used by them in the manufacture of wine, observed to the defendants' agent that in some syrups they had seen, sugar would fall down, and some would crystallize to candy; to which the agent replied, " Our syrup will not crystallize, nor sugar fall down. · I warrant our syrup all right." *Held* that this representation, in connection with evidence that the purchase was of rock candy syrup, that it was so billed to the plaintiffs, and that rock candy syrup will not crystallize, or the sugar fall down, tended to show an express warranty that the syrup to be delivered under the contract should be rock candy syrup, or at least, syrup which would not crystallize, or deposit the sugar.

*Held, also*, that the interpretation of this conversation, and what particular warranty was intended, was a question for the jury.

The plaintiffs notified the defendants that they had some doubts whether the sugar sent them was such as had been bargained for, and had some suspicions it was not, but were inclined to risk using it. The defendants, instead of cautioning the plaintiffs against using the sugar if it was not of the quality ordered, or offering to take it back, replied in a way calculated to induce them to go on and use the syrup, and to lead them to repose upon the idea that they, the defendants, would make the matter right. *Held* that the idea that both parties supposed they were acting under an express warranty, was strengthened by this correspondence.

*Held, also*, that if the defendants, on receiving this notification, were not absolutely called upon to caution the plaintiffs against using the syrup, if they intended to insist that by using it the plaintiffs would waive all claim against

Day *v.* Pool.

them for any deficiency of quality, certainly fair dealing would not permit them to lull the plaintiffs into security, by suggesting, in ever so vague a manner, that the defendants would make a fair deduction if the quality of the syrup was not up to the contract.

APPEAL, by the plaintiffs, from a judgment of nonsuit ordered at the Chautauqua circuit.

*C. D. Murray,* for the appellants.

I. This being a sale by sample, there is in law a warranty that the bulk of the goods sold correspond with the sample exhibited. (*Waring* v. *Mason,* 18 *Wend* 425. *Beirne* v. *Dord,* 5 *N. Y.* 95.) And cases cited by Jewett, J., where he says, when a contract for the sale of goods is made by sample, it amounts to an undertaking on the part of the seller with the purchaser, that all the goods are similar, both in nature and quality, to those exhibited; and if they be not, the purchaser may either rescind the contract by returning the goods in a proper time, or keep them and recover damages for the breach of such warranty. (*Id.* 99.) But in this case, there is the express agreement on the part of the defendants, that "our syrup will not crystallize, or sugar fall down." Upon this point then, the question is squarely presented. Upon a sale of goods, with an agreement to deliver at a future day, where there is an express warranty as to quality, does the right of action for a breach of the warranty survive the receipt of the goods and a reasonable time to examine, without notice of defects and offer to return? This case was decided upon the authority of *Reed* v. *Randall,* (29 *N. Y.* 358.) We submit, that *Reed* v. *Randall* does not decide any such question, but expressly limits the doctrine enunciated to a case of *implied* warranty, and states: "It is understood of every contract for the future sale and delivery of an article of merchandise, even without express terms, that it shall be of a merchantable quality." And upon the delivery of property pursuant to such a contract,

&c., the learned justice applies the rule. (*Id.* 393.) At page 362, he states : " A warranty, then, cannot be predicated upon the contract alleged in the complaint; and the rules of law, by which the rights of parties in respect to warranties are regulated, are inapplicable." The same construction and rule is again enunciated in *Foot* v. *Bentley*, (44 *N. Y.* 166,) and Gray, commissioner, citing the case of *Reed* v. *Randall*, says : " The facts in that case did not, as the court decided, constitute a warranty, and it was disposed of on that ground." (*Id.* 170.) He further says, " in this case the warranty is found as a fact. No obligation, therefore, existed requiring the plaintiffs to return, or offer to return the property warranted ;" citing *Muller* v. *Eno*, (14 *N. Y.* 597.) The same rule is established in *McCormck* v. *Sarson*, (45 *N. Y.* 265.) Judge Peckham, after citing the rule and the cases decided, including *Reed* v. *Randall*, adds : " This is the rule in the absence of any fraud or warranty. No fraud or warranty was claimed, or offered to be proved in this case." (*Id.* 268.) The main difference in the cases cited, and our case, is this : There was an express warranty that we should receive rock candy syrup, within a given time, and that it should not crystallize, or sugar fall down in it, and for the breach of that contract this action is brought. The case of *Neaffie* v. *Hart*, (4 *Lans.* 4,) presents the question precisely as presented in *Reed* v. *Randall*. That is on an implied warranty, and as Justice Johnson squarely puts the point, the question was, whether the plaintiff had fulfilled his executory contract. Here, the plaintiffs did notify the defendants of the defects in the syrup, and that it was not coming forward according to agreement.

II. This syrup was bought for the manufacture of wine. The defendants were notified that the plaintiffs wanted it for that purpose and nothing else. That they wanted syrup that would not crystallize, or sugar fall down. That they were to commence the manufacture of wine about

Day *v.* Pool.

the 15th of October. Mr. Clark says: "I have always been trying to sell it to you, and now I want you to give us a chance. Our syrup will not crystallize, or sugar fall down." Upon the purchase of this syrup for a specific purpose, and a full disclosure of its qualities necessary to make it fit for that purpose, and the representations made by the defendants as connected therewith, this case comes within the case of *Randall* v. *Roper*, (97 *Eng. Com. Law*, 82,) cited in *Passinger* v. *Thornburn*, (34 *N. Y.* 637.) Also an unreported case in this eighth district, the opinion written by Judge Barker, where the report of a referee was sustained, who gave a report in favor of the plaintiff, on the purchase of two bags of large clover seed, the plaintiff representing to the seller—a grocery house in Buffalo—that he wanted the large kind to sow, and was going to sow it, and the seller warranted the seed to be the large kind. This case, in principle, also comes within the rule of *Park* v. *The Morris Axe and Toole Company*, (4 *Lans.* 103 ;) *Passinger* v. *Thornburn*, (34 *N. Y.* 634, *and cases cited in the opinion.*)

III. It was error to refuse to submit to the jury the question of the amount of damages the plaintiffs had sustained for a failure to deliver according to agreement.

*J. S. Russell*, for the respondents.

I. The case shows that the contract was executory; it had none of the elements of a sale. The syrup was not then manufactured, but was to be thereafter procured by the defendants; was not and could not be designated, and the defendants had not done every act in regard to it that they were required to do before the title would pass to the plaintiffs, without which it could not have been an executed sale. A subsequent delivery to an undesignated carrier would not pass the title, or take the case out of the statute of frauds. (*Rodgers* v. *Phillips*, 40 *N. Y.* 519.)

I1. The contract being executory, the plaintiffs' remedy to recover damages, on the ground that the syrup furnished did not correspond with the contract, did not survive acceptance by the plaintiffs, after opportunity to ascertain its defects; unless the plaintiffs offered to return it, or refused to receive it, or gave notice to the defendants to take it back on account of the defects, properly stating them in such notice. · The retention of the syrup by the plaintiffs, without such offer or notice, is a conclusive assent on their part, that the contract has been performed, both as to quality of article and the time of delivery. (*Reed* v. *Randall*, 29 *N. Y.* 358. *Howard* v. *Hoey*, 23 *Wend.* 350. *Hart* v. *Wright*, 17 *id.* 275. *Neaffie* v. *Hart*, 4 *Lans.* 4. *Leavenworth* v. *Packer*, 52 *Barb.* 133. *Fitch* v. *Carpenter*, 43 *id.* 43. *Muller* v. *Eno*, 4 *Kern.* 601. *McCormick* v. *Sarson*, 45 *N. Y.* 265; *opinion by Peckham.*) 1. The case shows the plaintiffs had ample opportunity to ascertain the defects of the syrup before its appropriation by them in the manufacture of wine. Ryckman, one of the plaintiffs and business ·manager of the firm, was an expert, and knew rock candy syrup; also his men were experts. They did discover the defects in the syrup for which they now seek to recover, from time to time, as each lot arrived, and before they had appropriated it to their use; and after such discovery used it in the manufacture of wine, depriving the defendants of the opportunity of an examination that might enable them to test the quality of the syrup, and show by experts its conformity to the quality agreed to be procured and delivered. 2. The evidence nowhere shows that the plaintiffs refused to receive the syrup on the contract, or offered to return it, or gave notice to the defendants to take it back. They commenced to receive it September 20, 1870, and the last lot was shipped November 4, and received some four days later. The first letter from the plaintiffs to the defendants

Day v. Pool.

finding any fault with the syrup, was dated November 20, some twelve days after the last lot had been received by them, and after all the syrup had been consumed by them in the manufacture of wine, and after all had been paid for except the last six barrels. The notice sent by Captain Fay was that they were dissatisfied with the syrup, and that they were not receiving it in time. Captain Fay, as the plaintiffs' agent, did not refuse to receive it, or offer to return it, or notify the defendants to take it away, but directed the defendants to send some more.

III. The fact that a sample was selected as a guide to the defendants to determine the quality of the syrup to be, by the defendants, procured and delivered, does not change the contract to a sale. It is still executory, and the plaintiffs' rights consisted in requiring the delivery of an article to correspond, and they were not required to accept an inferior article. If they have done so without requiring a warranty upon the delivery, they are without remedy. (*Sprague* v. *Blake*, 20 *Wend.* 61.)

IV. The question of offer to return and notice of defects, was a question of law, there being no conflict of evidence upon the subject. The plaintiffs requested this question to be submitted to the jury. There being no conflict of evidence, the court refused. The action having been brought for damages, after acceptance, the court held that time and quality had been waived; that the plaintiffs' right of action did not survive.

The only questions presented by the plaintiffs' exceptions are, whether the court was right in holding as matter of law upon a conceded executory agreement, that the acceptance and conversion of the syrup, without fraud or warranty on delivery, on the part of the defendants, was a waiver by the plaintiffs of any claim for damages, for non-performance in quality or time. The question of warranty upon the sale is not raised by the exceptions.

TALCOTT, J. The defendants are merchants in New York, dealing in syrups. The plaintiffs are manufacturers of wine, at Brocton, in Chautauqua county. In September, 1870, the plaintiffs, by parol, made an executory contract to purchase of the defendants eighty barrels of rock candy syrup, to be used by the plaintiffs in the manufacture of wine. At the time of the order given by the plaintiffs to the defendants, several samples of syrups were exhibited by the defendants, one of which was selected by the plaintiffs, and the order given for syrup of that description. At the time of the agreement for the purchase, the agent of the plaintiffs stated to the agent of the defendants, that in some syrups he had seen, sugar would fall down, and some would crystallize to candy. To which the agent of the defendants replied: "Our syrup will not crystallize, or sugar fall down; I warrant our syrup all right." The sugar was not owned by the defendants, at the time of this contract, but it was understood that it was to be subsequently procured by them of the manufacturers in Boston. The syrup was forwarded to the plaintiffs, in different lots, and by them received and used. There is a syrup made from sugar, called in the trade, sugar syrup, which is of a quality and price inferior to the rock candy syrup; and syrup in which the sugar falls down and crystallizes is much less valuable for use in the business of the plaintiffs than that in which this does not occur. The syrup was sent to, and received by the plaintiffs, in eight different lots of from six to twelve barrels each, and used by the plaintiffs upon arrival, and was paid for by the plaintiffs' remittance about the same time, except the last lot, which was paid for the following spring, and after the plaintiffs had claimed that the syrup was not of the description and quality agreed to be sent, and was not sent at the time agreed on, and demanded a rebate on this account, which was refused. This action is brought upon the allegation of a sale of syrup by the defendants to the plaintiffs,

with a warranty that the same was pure and clear rock candy syrup, and that it would not thicken to candy, and was, in all respects, of the best quality. And also upon the ground that the syrup was not delivered in season, according to the contract. On the trial, the plaintiffs gave evidence tending to show that the syrup which was sent them by the defendants, was not rock candy syrup, but was sugar syrup. That the sugar therein did crystallize and settle. That the contract called for an earlier shipment than had been made, and tending to show that they had sustained considerable damage, by reason of the inferior quality of the syrup and the delay in the shipment of it. The evidence of the plaintiffs also tended to show that the quality of the syrup could be detected on examination before using. That the inferior quality of this syrup, and the fact that the sugar in it did settle, was in fact discovered and known to the plaintiffs at the time they used it. It furthermore appeared that on the receipt of the second lot of the syrup, the plaintiffs wrote to the defendants, as follows: "We opened one barrel and find that this syrup crystallizes, but it looks well. If it is all right, then we shall have no trouble, but looks like sugar syrup; but we expect it will be rock candy syrup. If so, all is well." While they were receiving the syrup, the plaintiffs also sent back a sample of that received to the defendants, with notice that they, the plaintiffs, were dissatisfied with it, and the quality was not such as they expected. The defendants professed to be ignorant that they had sent such syrup as the sample so returned, and said they had examined most of the syrup sent and supposed it to be good. At the close of the testimony, the defendants moved for a nonsuit, on the ground that the agreement being executory, and the syrup having been delivered under it, and the plaintiffs having received it with a knowledge of its quality, and converted it to their own use, without any offer to return the same, or notice to the defendants that they

would not receive the same upon the contract, could not recover in this action. The plaintiffs claimed the right to go to the jury, but in the statement of their position did not controvert the idea that the quality of the syrup was ascertainable and its inferior quality known to the plaintiffs before they used it, or suggest the submission of that question to the jury.

It is held in *Reed* v. *Randall* (29 *N. Y.* 358) that "in cases of executory contracts for the sale and delivery of personal property, the remedy of the vendee to recover damages on the ground that the article furnished does not correspond with the contract, does not survive the acceptance of the property by the vendee, after opportunity to ascertain the defect, unless notice is given to the vendor, or the vendee offers to return the property. The retention of the property by the vendee is an assent on his part that the contract has been performed. He is not bound to receive and pay for a thing which he has not agreed to purchase; but if the thing purchased is found, on examination, to be unsound, or not to answer the order given for it, he must immediately return it to the vendor, or give him notice to take it back, and thereby rescind the contract, or he will be presumed to have acquiesced in the quality." The same doctrine is also laid down in *Hargous* v. *Stone*, (1 *Seld.* 73,) and this, according to both the cases referred to, is the rule where there is an implied warranty; such, for instance, as that the article shall be of a merchantable quality. The case of *Reed* v. *Randall*, was the case of the purchase of a certain crop of tobacco, then growing. The defendant agreed to sell the crop of tobacco, and to deliver the same to the plaintiffs, well cured and boxed, and in good condition, at such place in Syracuse as the plaintiffs should thereafter designate, the early part of May then next. The plaintiffs paid a part of the purchase money down, a further sum thereafter, and the balance on the day of the delivery of the tobacco, which was de-

Day *v.* Pool.

livered, in pursuance of the notification of the plaintiffs, at a storehouse in Syracuse.' The action was brought by the plaintiffs setting forth the contract, the payment and delivery, and alleging that the defendant did not perform the agreement on his part, and did not deliver the crop of tobacco, well cured and boxed, and in good condition, but on the contrary thereof, a large portion of the tobacco was in a bad condition at the time of the delivery thereof, and had not been properly cured, but was wet, sweaty and rotten, which was unknown to the plaintiffs when they received the same; by reason of which the value was greatly deteriorated, and the plaintiffs were put to great trouble and expense in overhauling, separating and re-packing the same, and had sustained damage thereby. · On the trial, the defendant's counsel objected to the sufficiency of the complaint to maintain the action, for the reason that it did not appear that the plaintiffs, on discovering the condition of the tobacco, had offered to return it, or notified the defendant of its condition, and it being admitted that the plaintiffs had no evidence that they had notified the defendant of the condition of the tobacco, or had returned or offered to return it, a nonsuit was directed, which nonsuit was affirmed in the Supreme Court and in the Court of Appeals.

In the prevailing opinion, delivered by Judge Wright, he says: " This conclusion, I think, was right. It is not claimedto be otherwise, unless there was a warranty that the tobacco, when delivered, should be well cured and in good condition. But the stipulation, in respect to the quality and condition of the article when delivered, *constituted no express warranty.* The contract was executory, for the sale of a growing crop of tobacco to be delivered the spring following, well cured and in good condition. The article bargained for, and to be furnished in the future, was a *merchantable* crop of tobacco. This was what the vendor agreed to sell and the vendee to purchase. It was the

sale of a particular thing, by its proper description *merely ;* and the descriptive words used for defining the thing to be sold, were of the substance of the contract, not collateral to the main object of it.  \*   \*   \*   In an executory contract for the sale of personal property, the law implies that the article, when furnished, shall be of merchantable quality, and if the tobacco, when delivered, was not well cured and in good condition, but was wet, sweaty and rotten, it was not merchantable.  In legal effect, therefore, the agreement as to which the breach was alleged, was the same as the law would imply in the absence of words of express contract.  It would be established upon proof of a contract to sell and deliver the tobacco at a future time, and without proof of express words between the parties; and if express words were used, between the parties, yet superadding to the terms of a contract words expressing an obligation which the law implies does not change the nature or extent of the obligation, or the remedy upon it.  A warranty, then, cannot be predicated upon the contract alleged in the complaint, and the rules of law by which the rights of the parties, in respect to warranties, are regulated, are inapplicable.  A breach of the contract was not a breach of warranty, but a mere non-compliance with the contract that the defendant had agreed to fulfill."  HOGEBOOM, J., delivering the opinion of the minority of the court, held that the complaint alleged an express warranty, and that conceding that the merchantable quality of the article is implied in every executory contract for the sale of personal property, it " would not obliterate the distinction between the effect of an express warranty, and that of a mere legal presumption as to the condition or description of the article." He defines an express warranty as " something more than a mere description of the article ; it is a guarantee of what shall be its future condition at the time of delivery.  It is something independent of, and not indispensable to, the

Day *v.* Pool.

mere act of sale and delivery, and is not merged in the latter." The case of *Hargous* v. *Stone,* (1 *Seld.* 73,) was an executory contract. A vendee desired to purchase cotton cloth to be imported into Mexico. By the revenue laws of Mexico the importation of cotton cloths of a less fineness than over 30 threads to the quarter square inch, was prohibited. As in the case at bar, several samples were exhibited and the goods ordered according to the sample selected, as in the case at bar. It did not appear that the vendor had notice that the goods were procured for the Mexican market, or that he was informed as to the revenue laws of that country. The goods were delivered at a packing house, where they were opened and repacked, under the direction of the plaintiff. The goods were sent to Mexico, and there being found to be of the fineness of only 28 and 29 threads to the quarter square inch, they were condemned and forfeited by the custom house authorities. The action was similar to that in *Reed* v. *Randall,* alleging a warranty. The fact that the sale was by sample, was relied on as raising a warranty. But the court held that there was no warranty. That the implied warranty in case of a sale by sample, is confined to cases where the purchaser has no opportunity to inspect the goods, and that something beyond the mere exhibition of the sample, is requisite to create a warranty, "that the bulk of the goods is of the same quality as the sample, and that such an exhibition is but a representation that the sample has been fairly taken from the bulk of the commodity." Paige, J., delivering the opinion of the court, says : " Executory contracts of sale do not depend upon the same principles as executed contracts of sale. The doctrine of *implied warranty* has properly no application to the former. Where a contract is executory, that is, to deliver an article not defined at the time, on a future day, whether the vendor has, at the time, an article of the kind on hand, or it is afterwards to be procured or

manufactured, the contract carries with it an obligation that the article shall be merchantable, at least of medium quality or goodness. If it comes short of this, the vendee may rescind the contract, and return the article after he has had a reasonable time to inspect it. He is not bound to receive or pay for it, because it is not the thing he agreed to purchase. But if the article is, at the time of the sale, in existence and defined, and is specifically sold, and the title passes *in presenti*, the transaction amounts to an executed sale, and although there is no opportunity for inspection, there will be no implied warranty that the article is merchantable. 1. When the sale is executory, if the goods purchased are found, on examination, to be unsound or not according to the order given for them, the purchaser must immediately return them to the vendor, or give him notice to take them back, and thereby rescind the contract, or he will be presumed to have acquiesced in the quality of the goods. * * * Stone was guilty of no fraud or false representation, and he made no express warranty of any kind. My opinion is, and such is the opinion of the court, that the plaintiff made out no cause of action, and that he was properly nonsuited."

It is unnecessary to refer to the various cases cited from the English reports, and the previous cases in this country, since these two cases of *Hargous* v. *Stone*, and *Reed* v. *Randall*, are supposed to embody the law on this subject, as at present settled in this State and intended to be administered by the courts. The quotations have been made from the opinions in those cases, that it may be seen, at a glance, precisely what was intended to be decided in those cases. How far the court intended to apply the doctrine of *caveat emptor* and where they intended to stop.

It is obvious that there are many cases where the right to reject an article delivered under an order or upon an executory contract, will afford but an incomplete remedy.

Day *v.* Pool.

The case at bar affords an illustration. The plaintiffs had on hand a large quantity of grape juice, which they were desirous of converting into wine. To do this it was necessary that syrup should be added to it at a certain stage of the natural fermentation, and if this were omitted at the proper time great damage would ensue. The plaintiffs had made a contract with the defendants for the purchase of this syrup, and it was important that it should be used at once. The probability was, that any delay would be attended with danger of great damage. Syrup of an inferior quality to that bargained for, would to some extent answer the purpose, but its use was greatly less profitable, for the reasons explained by the testimony. The interests of the plaintiffs would strongly impel them to use the syrup on its arrival, though of inferior quality and much less valuable than such as they had ordered, but if they do use it, they cannot afterwards complain that it is not of the quality and description which they ordered.

How then are the plaintiffs to protect themselves against the inconvenience and embarrassment of such a position? Cannot the parties contract against such a consequence? Most assuredly they can. The contract is lawful. It violates no requirements of public policy. The parties are competent to make such a contract. How then is such a contract to be made? We answer, upon the authority of *Hargous* v. *Stone* and *Reed* v. *Randall,* by the vendee, at the time of the agreement to purchase, taking an *express* warranty that the goods, when delivered, shall possess the particular qualities which it is important to him to secure. Can it be supposed, after a careful perusal of the opinions delivered in *Hargous* v. *Stone,* and *Reed* v. *Randall,* that the court meant to hold that a party could not by express contract relieve himself from the obligation to return the property, and still hold the vendor responsible for the deficiency in quality? It seems to us not.

As we understand those decisions, they expressly recognize the right of the vendee to protect himself against the contingency of being obliged to use, at his own risk and loss, an inferior article, or to be deprived of it altogether, when to attempt to supply its place might be attended with great inconvenience and loss, and that the mode of effecting this object is by exacting an express warranty, and that in such case the doctrine of warranty applies at the option of the vendee, to the same extent as if it were an executed sale, in which latter case it is well settled that the vendee is under no obligation to return the thing warranted, on ascertaining that it does not fulfill the warranty, but may keep it and rely on his warranty for redress.

In this case there was no implied warranty of merchantable quality broken. The syrup was merchantable, and was indeed of a quality often used even by the plaintiffs themselves.

Its delivery would have been in compliance with a contract to sell and purchase syrup, but it did not comply with the express warranty, if there were one, which was a contract collateral to the sale of the goods, and not merged in it.

It now becomes proper to advert to two other cases in the court of last resort, decided since the case of *Reed* v. *Randall*. The first is the case of *Foot* v. *Bentley*, (44 *N. Y.* 166,) decided by the Commission of Appeals. It appeared, in that case, that the plaintiffs gave the defendant's travelling agent an order for teas, according to a sample exhibited by the agent at the time. The agent said he did not know how many packages of that kind of tea the plaintiffs had at the time, but supposed they had from ten to seventeen packages in all, and the agent warranted the tea in the packages to be better than the sample. The plaintiff agreed to purchase it at a certain price, and it was agreed

that the tea should remain on store in New York until the plaintiff should order it shipped to him at Rome, in Oneida county.

.The contract was verbal, and nothing was paid at the time, and no delivery or change of possession took place until the tea was finally shipped upon the order of the plaintiff.

At different times after the contract the plaintiff sent the defendant his notes for the purchase money. And finally, about the 20th of April, pursuant to the order of the plaintiff, the tea was shipped to and received by him at Rome. The plaintiff kept the tea till June before making any attempt to discover whether it was like the sample, without returning or offering to return it, and discovering it to be of an inferior quality, brought the action upon the warranty. The point was taken by the defendant, that the plaintiff should have examined the tea, and if it did not correspond with the sample, should have returned it; and the case of *Reed* v. *Randall* was relied on. But the commission held the plaintiff entitled to recover, and upon this point Gray, C., says: It was also objected that because the plaintiff did not, at the earliest practicable time, after the tea was received in store, examine it, and, on account of its being of less value than the sample, offer to return it, he ought not to recover; and in support of that position the case of *Reed* v. *Randall* was cited. The facts in that case did not, as the court decided, constitute a warranty, and it was disposed of on that ground. In this case, the warranty is found as a fact. No obligation, therefore, existed requiring the plaintiff to return or offer to return the property warranted." It will be noticed that although it might be claimed, perhaps, that the sale of the tea was an executed sale, yet Commissioner Gray does not hold it to be such, or suggest that question as one of any importance, but understands the

case of *Reed* v. *Randall* as holding that there may be an express warranty, with the ordinary obligations created by a warranty, whether the sale be executed or executory.

In the same case Commissioner Earl delivered an opinion, arriving at the same result. He, however, does not meet the question, whether there is any difference, as to this question, between a sale executory and one executed. His opinion is to the effect that, as there was no compliance with the statute of frauds, the sale became valid and was consummated on the delivery of the tea, and says : ".This, then, must be treated as an executed sale with warranty, and the plaintiff was entitled to recover without any offer to return the tea for any breach of warranty." Now, in the case at bar, there was no compliance with the statute of frauds, and, according to the opinion of Commissioner Earl, the sale became valid and executed as to the various parcels of syrup when they were respectively ·delivered, and the warranty then attached. Upon the ground taken by either commissioner, in *Foot* v. *Bentley,* the nonsuit in this case was erroneous, if there was an express warranty as to the quality of the syrup.

In *McCormick* v. *Sarson,* (45 *N. Y.* 265,) decided by the Court of Appeals, the defendant agreed to purchase certain lumber in the plaintiff's mill-yard, consisting of three kinds, respectively denominated prime, merchantable and refuse, at specified prices for each kind. The lumber was thereafter to be measured and delivered. The defendant received the lumber, and gave receipts for a certain quantity as prime, and a certain other quantity as· merchantable. In an action by the vendor to recover the purchase price of the lumber, on the trial, the defendant offered to show that the lumber receipted for as prime and merchantable was not such, but was in fact of an inferior· quality. The majority of the court held that the defendant could not contradict the receipts. Peckham, J., deliv-

Day *v.* Pool.

ering the opinion of the majority, and referring, among other cases, to *Reed* v. *Randall* and *Hargous* v. *Stone*, says: " If he accept it after examination, or after an opportunity for examination, as fulfilling the contract, he is bound by such election. This rule is well settled. This is the rule, in the absence of any fraud or warranty. No fraud or warranty was claimed, or offered to be proved in this case."

We see, therefore, that the Court of Appeals appears to understand the rule as laid down by that court in *Hargous* v. *Stone*, and *Reed* v. *Randall*, as not embracing cases where there is an express warranty. And the Commission of Appeals not only so understands these cases, but seems to have expressly held that under a contract like that in the case at bar, if there be a warranty, the plaintiff can recover notwithstanding he has given no notice, and neither returned nor offered to return the goods delivered.

In *Neaffie* v. *Hart*, (4 *Lans.* 4,) decided in this department, there was no express warranty pretended.

This brings us to the question, whether there was any evidence tending to show, and if any what, express warranty in this case. The testimony of the plaintiff Ryckman, who made the bargain, is : " I told him that in some syrups I had seen, sugar would fall down, and some would crystallize to candy. He says : " Mr. Ryckman, our syrup will not crystallize, or sugar fall down ; I warrant our syrup all right." Here was an express warranty *ex vi termini* of something. What was it that was warranted ? Taken as a reply to the observation of Ryckman, and in connection with the evidence that the purchase was of rock candy syrup, that it was so billed to the plaintiffs, and that rock candy syrup will not crystallize, or the sugar fall down, we think the testimony, by reasonable interpretation, tended to show an express warranty that the syrup to be delivered under the contract should, be rock

candy syrup, or at least, syrup which would not crystallize, or deposit the sugar.

The interpretation of this conversation, and what particular warranty was intended, was, we think, in this case, a question for the jury. The idea that both parties supposed they were acting under an express warranty on this subject, is strengthened by the correspondence. On the receipt of the second lot of syrup the plaintiffs wrote: "We opened one barrel and find that this syrup crystallizes, but it looks well, and shall soon open on it right smart. If it is all right, then we shall have no trouble, but looks like sugar syrup. If so, it is all well." In reply to this letter the defendants say: "You need have no fears that we will not do the square thing in all our transactions with you."

Here the defendants were notified that the plaintiffs had some doubts whether the sugar was such as had been bargained for, and had some suspicions it was not, but were inclined to risk using it. Instead of cautioning the plaintiffs against using the sugar if it was not of the quality ordered, or offering to take it back, the defendants reply to the plaintiffs' suggestions in a way calculated to induce them to go on and use the syrup, and to lead them to repose upon the idea that they, the defendants, would make the matter right. If the defendants were not absolutely called upon to caution the plaintiffs against using the sugar, on receiving this notification, if they intended to insist that by using it the plaintiffs would waive all claim against the defendants, for any deficiency of quality, certainly fair dealing would not permit them to lull the plaintiffs into security by suggesting, in ever so vague a manner, that the defendants would make a fair deduction if the quality of the syrup was not up to the contract. We think there was no warranty as to the time of delivery, which survived the acceptance and use of the syrup;

---

and that the plaintiffs cannot recover upon the allegation that the syrup was not forwarded as early as was agreed.

The judgment must be reversed and a new trial ordered; costs to abide the event.

JOHNSON, P. J., concurred.

BARKER, J., dissented.

New trial granted.

[FOURTH DEPARTMENT, GENERAL TERM, at Rochester, September 10, 1872. *Johnson, Talcott* and *Barker,* Justices.]