LEONARD AMES and Others, Respondents, *v.* THE NORWICH LIGHT COMPANY, Appellant.

THE NORWICH LIGHT COMPANY, Appellant, *v.* LEONARD AMES and Others, Respondents.

*Sale — breach of a warranty contained in an executory contract of sale — the vendee may retain the goods and offset, in an action for the price, his damages under the warranty.*

The vendee in an executory contract of sale, containing a warranty as to the quality of the article contracted for, is not bound, upon discovering the breach of the warranty, to return or offer to return the property, but may retain it and have his remedy upon the warranty.

A contract for the installation of an electric plant contained a guaranty that the engines would develop their rated horse power upon a stated hourly consumption of coal, the same to be determined by a test covering a run of one day, and that the efficiency and fuel economy would be the best obtainable for engines of their type and horse power capacity. The boilers furnished thereunder were improperly constructed of less horse power than the engines, in consequence of which the engines could not be operated as economically with regard to coal consumption as if the boilers had been constructed of the same horse power, and a one day's test of the coal consumption made by the vendee (the vendors having omitted to make it) demonstrated that the coal consumption was greater than that guaranteed by the contract.

*Held,* that the vendee, although retaining possession of the plant, was entitled in an action for the purchase price to offset the damages resulting from this breach of warranty.

APPEAL by the Norwich Light Company, the defendant in the first above-entitled action and the plaintiff in the second above-entitled action, from a judgment of the Supreme Court in favor of the plaintiffs in the first above-entitled action and of the defendants in the second above-entitled action, entered in the office of the clerk of the county of Chenango on the 2d day of November, 1896, upon the report of a referee, and also from an order of the Supreme Court, made at the Madison Special Term and entered in the office of the clerk of the county of Chenango on the 2d day of November, 1896, directing the entry of said judgment.

The first above-entitled action was brought in June, 1895, to recover a balance due upon a contract entered into between the

plaintiffs and defendant on the 30th day of April, 1894, by which the former agreed to sell, deliver and place for the latter at Norwich, N. Y., an electric light plant. It was claimed by the plaintiffs that the contract was fully performed on the 15th day of December, 1894, and they, having filed a notice of lien, sought in this action to foreclose the same.

Prior to the commencement of said action, and on the 2d day of January, 1895, the said Norwich Light Company commenced the second above-entitled action to recover damages of said Leonard Ames and others for their alleged failure to perform the covenants contained in said contract.

The two actions were consolidated, and the issues therein tried before a referee. In the following memorandum Leonard Ames et al. will be referred to as the plaintiffs, and the Norwich Light Company as the defendant.

The referee, in his conclusions of fact, finds that the plaintiffs failed to perform their covenants contained in the contract in several important regards, viz.:

"That said plaintiffs have never made any test of said plant covering one day's run, as is mentioned and described in said contract.

"That a proper construction of said plant, under said contract, required that the boilers should be of equal capacity and horse power with the engines.

"That the engines are of 115 horse power each, and the said boilers are not over 100 horse power each, and the same are insufficient to properly propel said engines at their rated horse power.

"That said boilers are improperly constructed, in that they are not constructed of the same horse power as said engines, and that, by reason of not being 115 horse power each, said boilers do not propel said engines with the economy of coal consumption that they would had they been constructed of the same horse power as said engines."

He also finds that there were other substantial defects in the work. His final conclusion was in favor of the plaintiffs, awarding them a recovery for the balance due on the contract, less the sum of $732.40 allowed for damages, and made up of the following items: $75 for repairing leaks in said boilers; $10 for the expense of repairing the babbit in the crank pin box; $22, the expense of

replacing valves and stem and disc, and the sum of $625 for properly resetting said boilers and lengthening the grates.

*L. C. Aldrich* and *Albert F. Gladding*, for the appellant.

*George N. Burt* and *John W. Church*, for the respondents.

PUTNAM, J.:

Under the findings of the referee there was a substantial failure on the part of the plaintiffs to perform their covenants contained in the contract under which the action was brought. The case, therefore, is not like that of *Woodward* v. *Fuller* (80 N. Y. 312), where a contractor who had substantially complied with the terms of a contract was held entitled to recover, notwithstanding slight defects in the work, but more like that of *Smith* v. *Brady* (17 N. Y. 173), in which case it was held that a contractor who has substantially failed to perform his contract cannot recover for what he has done, notwithstanding that the owner has chosen to keep and enjoy the erection.

It is claimed on the part of the respondents that the principle enunciated in the case last cited does not apply to that under consideration; that the agreement under which they claim is an executory contract for the sale and delivery of personal property, and that the remedy of the vendee for defects in the work does not survive the acceptance of the property, after opportunity to ascertain the defect, unless notice has been given to the vendor, or the vendee has offered to return the property. (*Reed* v. *Randall*, 29 N. Y. 358.)

It is suggested by the appellant that the doctrine stated in *Reed* v. *Randall* (*supra*) does not apply to contracts for the erection of structures upon, and additions to real property, of such a character that a mechanic's lien will attach for the price of the material furnished. But in *Brown* v. *Foster et al.* (108 N. Y. 387), a contractor having agreed to sell and deliver to the plaintiff, and put up in running order at a place specified, certain machinery for a saw mill, it was held, in an action by the vendee to recover damages for a breach of contract, that his retention and acceptance of the mill prevented a recovery. Under the authority of this case it is at least doubtful whether an acceptance and retention by the defendant of the electric light plant delivered to it by the plaintiffs, and set up and placed on

the premises of the former, did not render the defendant liable to pay therefor.

But under the facts appearing in this case, was there any acceptance of the electric light plant in question by the defendant?

The contract was claimed by the plaintiffs to have been completed on the 15th day of December, 1894. On the 2d day of January, 1895, the defendant commenced an action to recover damages of the plaintiffs resulting from their alleged non-performance of the covenants contained in the contract. During the eighteen days between the time when the plaintiffs claimed the work was completed and the second of January, when the action was commenced by the defendant, it sufficiently appears that the latter claimed that the contract was not properly performed and refused to pay for the work performed and materials furnished.

There was no acceptance, therefore, by the defendant unless by its retention of the property. The contract contained the following provision :

" We guarantee that engines shall develop rated horse power on a fuel consumption not exceeding three lbs. of good anthracite coal (clean chestnut) per I. H. P. per hour, this to be determined by a test covering one day's run."

The referee found " that said plaintiffs have never made any test of said plant covering one day's run as is mentioned and described in said contract." Until the test, as provided by the contract, was made, the defendant was not compelled to act — to determine whether or not it would accept the performance of the contract by the plaintiffs. The test was necessary to determine whether the electric plant fulfilled the covenants contained in the contract. Until made the defendant's retention of the property could not be deemed an acceptance. Until the test was made the plaintiffs had not completed their work under the contract. We are inclined to think, therefore, that, under the facts appearing in the case, the retention of the electric light plant by the defendant should not be deemed an acceptance by it under the authorities above cited. But we do not deem it necessary to decide this question, as we have reached the conclusion that a new trial should be granted for the reasons below stated.

It is a well-settled doctrine that the vendee in an executory con-

tract of sale, with a warranty as to the quality of the article contracted for, upon the receipt of the article and subsequent discovery of the breach, is not bound to return or offer to return the property, but may retain it and have his remedy on the warranty. (*Day* v. *Pool et al.*, 52 N. Y. 416; S. C., 63 Barb. 506; *Hooper* v. *Story*, 79 Hun, 53, 55, and authorities cited.)

The contract under consideration, among other covenants of warranties, contained the following:

" We guarantee that engines shall develop rated horse power on a. fuel consumption, not exceeding three lbs. of good anthracite coal (clean chestnut) per I. H. P. per hour, this to be determined by a. test covering one day's run.   *   *   *

" *Economy.*   That the efficiency and fuel economy shall be the best obtainable for engines of this type and horse power capacity, and that this high grade of economy and efficiency shall be maintained through a much longer period of time than is possible with any form of piston valve engines."

The referee found: " That a proper construction of said plant under said contract required that the boilers should be of equal. capacity and horse power with the engines.

" That the engines are of 115 horse power each, and the said boilers are not over 100 horse power each, and the same are insufficient to properly propel said engines at their rated horse power.

" That said boilers are improperly constructed, in that they are not constructed of the same horse power as said engines, and that by reason of not being 115 horse power each, said boilers do not propel said engines with the economy of coal consumption that they would had they been constructed of the same horse power as said engines." ·

Without attempting to refer to the testimony in the case, it cannot be doubted that it justified those findings.   We find, therefore, in the contract a warranty that the efficiency and fuel economy of the electric light plant, which the plaintiffs agree to furnish to the defendant, shall be the best obtainable for engines of the type and horse power mentioned in the contract.   This was a most material and important covenant.   By the findings of the referee it appears that there was a breach thereof.   Under the authorities above cited the defendant was entitled to damages therefor.   The contract also·

provided for a fuel consumption not exceeding three pounds of good anthracite coal per hour, to be determined by a test covering one day's run. As we have seen, no test for one day was made by the plaintiffs, but the defendant afterwards made such test, and the evidence of Barrus shows that the consumption of fuel was three and twenty-six one-hundredths pounds per hour, thus showing a breach of the warranty of the plaintiffs as to the amount of fuel consumption. The witness Barrus testified that the damages resulting from the breach of the covenant contained in the contract as to the fuel economy of the machines furnished by the plaintiffs to the defendant was $5,000.

The referee made no allowance to the defendant for its damages sustained in consequence of the improper construction of the boilers furnished by the plaintiffs to the defendant under the contract, although finding that said boilers did not propel said engine with the economy of coal consumption that they would have done had they been constructed of the same horse power as said engines, as they should have been under the provisions of the contract.

In this regard we conclude that the referee erred, and, hence, without considering other questions raised, the judgment should be reversed and a new trial granted, costs to abide the event.

All concurred.

Judgment reversed, referee discharged and a new trial granted, costs to abide the event.