### AMES et al. v. NORWICH LIGHT CO.

### NORWICH LIGHT CO. v. AMES et al.

(Supreme Court, Appellate Division, Third Department.    November 10, 1897.)

SALES—BREACH OF WARRANTY—REMEDY.
    Warranties as to the efficiency and economy in fuel consumption of engines and machinery furnished are so material that the vendee may retain the property, and recover damages for the breach of them.

Appeal from judgment on report of referee.

Action by Leonard Ames and others against the Norwich Light Company to recover balance due on contract, and action by the Norwich Light Company against Leonard Ames and others for damages for breach of the same contract.    The actions were consolidated. From judgment against it, the Norwich Light Company appeals. Reversed.

The first above entitled action was brought in June, 1895, to recover a balance due upon a contract entered into between the plaintiffs and defendant

on the 30th day of April, 1894, by which the former agreed to sell, deliver, and place for the latter at Norwich, N. Y., an electric light plant. It was claimed by the plaintiffs that the contract was fully performed on the 15th day of December, 1894, and, they having filed a notice of lien, sought in the action to foreclose the same. Prior to the commencement of said action, and on the 2d day of January, 1895, the said Norwich Light Company commenced the second above entitled action to recover damages of said Leonard Ames and others for their alleged failure to perform the covenants contained in said contract. The two actions were consolidated, and the issues therein tried before a referee. In the following memorandum Leonard Ames et al. will be referred to as the "plaintiffs," and the Norwich Light Company as the "defendant." The referee, in his conclusions of fact, finds that the plaintiffs failed to perform their covenants contained in the contract in several important regards, viz.: "That said plaintiffs have never made any test of said plant covering one day's run, as is mentioned and described in said contract. That a proper construction of said plant under said contract required that the boilers should be of equal capacity and horse power with the engines. That the engines are of 115 horse power each, and the said boilers are not over 100 horse power each, and the same are insufficient to properly propel said engines at their rated horse power. That said boilers are improperly constructed, in that they are not constructed of the same horse power as said engines, and that by reason of not being 115 horse power each said boilers do not propel said engines with the economy of coal consumption that they would had they been constructed of the same horse power as said engines." He also finds that there were other substantial defects in the work. His final conclusion was in favor of the plaintiffs, awarding them a recovery for the balance due on the contract, less the sum of $732.40, allowed for damages and made up of the following items: $75 for repairing leaks in said boilers; $10 for the expense of repairing the babbit in the crank-pin box; $22, the expense for replacing valves and stem and disk; and the sum of $625 for properly resetting said boilers and lengthening the grates.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

L. C. Aldrich (Albert F. Gladding, of counsel), for appellant.

George N. Burt (John W. Church, of counsel), for respondents.

PUTNAM, J. Under the findings of the referee, there was a substantial failure on the part of the plaintiffs to perform their covenants contained in the contract under which the action was brought. The case, therefore, is not like that of Woodward v. Fuller, 80 N. Y. 312, where a contractor, who had substantially complied with the terms of a contract, was held entitled to recover, notwithstanding slight defects in the work; but more like that of Smith v. Brady, 17 N. Y. 173, in which case it was held that a contractor who has substantially failed to perform his contract cannot recover for what he has done, notwithstanding that the owner has chosen to keep and enjoy the erection. It is claimed on the part of the respondents that the principle enunciated in the case last cited does not apply to that under consideration; that the agreement under which they claim is an executory contract for the sale and delivery of personal property; and that the remedy of the vendee for defects in the work does not survive the acceptance of the property, after opportunity to ascertain the defect, unless notice has been given to the vendor, or the vendee has offered to return the property. Reed v. Randall, 29 N. Y. 358. It is suggested by the appellant that the doctrine stated in Reed v. Randall, supra, does not apply to contracts for the

erection of structures upon and additions to real property of such a
character that a mechanic's lien will attach for the price of the mate-
rial furnished.     But in Brown v. Foster, 108 N. Y. 387, 15 N. E. 608,
a contractor having agreed to sell and deliver to the plaintiff, and
put up in running order at a place specified, certain machinery for
a sawmill, it was held, in an action by the vendee to recover
damages for a breach of contract, that his retention and acceptance
of the mill prevented a recovery.     Under the authority of this case
it is at least doubtful whether an acceptance and retention by the
defendant of the electric light plant delivered to it by the plaintiffs,
and set up and placed on the premises of the former, did not render
the defendant liable to pay therefor.     But, under the facts appearing
in this case, was there any acceptance of the electric light plant in
question by the defendant?     The contract was claimed by the plain-
tiffs to have been completed on the 15th day of December, 1894.     On
the 2d day of January, 1895, the defendant commenced an action to
recover damages of the plaintiffs resulting from their alleged non-
performance of the covenants contained in the contract.     During the
18 days between the time when the plaintiffs claimed the work was
completed, and the 2d of January, when the action was commenced
by the defendant, it sufficiently appears that the latter claimed that
the contract was not properly performed, and refused to pay for the
work performed and materials furnished.     There was no accept-
ance, therefore, by the defendant, unless by its retention of the prop-
erty.     The contract contained the following provision:

"We guaranty that engines shall develop rated horse power on a fuel con-
sumption not exceeding three lbs. of good anthracite coal (clean chestnut)
per I. H. P. per hour; this to be determined by a test covering one day's run."

The referee found "that said plaintiffs have never made any test
of said plant covering one day's run, as is mentioned and described in
said contract."     Until the test as provided by the contract was made,
the defendant was not compelled to act,—to determine whether or
not it would accept the performance of the contract by the plaintiffs.
The test was necessary to determine whether the electric plant ful-
filled the covenants contained in the contract.     Until made, the de-
fendant's retention of the property could not be deemed an accept-
ance.     Until the test was made, the plaintiffs had not completed
their work under the contract.     We are inclined to think, there-
fore, that, under the facts appearing in the case, the retention of the
electric light plant by the defendant should not be deemed an ac-
ceptance by it, under the authorities above cited.     But we do not
deem it necessary to decide this question, as we have reached the
conclusion that a new trial should be granted for the reasons below
stated.     It is a well-settled doctrine that the vendee in an executory
contract of sale with a warranty as to the quality of the article con-
tracted for, upon the receipt of the article and subsequent discovery
of the breach, is not bound to return, or offer to return, the property,
but may retain it, and have his remedy on the warranty.     Day v.
Pool, 52 N. Y. 416; Id., 63 Barb. 506; Hooper v. Story, 79 Hun, 53–
55, 29 N. Y. Supp. 639, and authorities cited.     The contract under

consideration, among other covenants of warranties, contained the
following: .

"We guaranty that engines shall develop rated horse power on a full con-
sumption not exceeding three lbs. of good anthracite coal (clean chestnut) per
I. H. P. per hour; this to be determined by a test covering one day's run.

"Economy. That the efficiency and fuel economy shall be the best obtainable
for engines of this type and horse-power capacity, and that this high grade
of economy and efficiency shall be maintained through a much longer period
of time than is possible with any form of piston-valve engines."

The referee found:

"That a proper construction of said plant under said contract required that
the boilers should be of equal capacity and horse power with the engines.
That the engines are of 115 horse power each, and the said boilers are not
over 100 horse power each, and the same are insufficient to properly propel
said engines at their rated horse power. That said boilers are improperly con-
structed, in that they are not constructed of the same horse power as said
engines, and that, by reason of not being 115 horse power each, said boilers
do not propel said engines with the economy of coal consumption that they
would had they been constructed of the same horse power as said engines."

Without attempting to refer to the testimony in the case, it can-
not be doubted that it justified those findings. We find, therefore,
in the contract, a warranty that the efficiency and fuel economy
of the electric light plant which the plaintiffs agreed to furnish the
defendant shall be the best obtainable for engines of the type and
horse power mentioned in the contract. This was a most material
and important covenant. By the findings of the referee it appears
that there was a breach thereof. Under the authorities above cited,
the defendant was entitled to damages therefor. The contract also
provided for a fuel consumption not exceeding three pounds of good
anthracite coal per hour, to be determined by a test covering one
day's run. As we have seen, no test for one day was made by the
plaintiffs, but the defendant afterwards made such test, and the evi-
dence of Barrus shows that the consumption of fuel was 3.26 pounds
per hour, thus showing a breach of the warranty of the plaintiffs
as to the amount of fuel consumption. . The witness Barrus testified
that the damages resulting from the breach of the covenant contained
in the contract as to the fuel economy of the machines furnished by
the plaintiffs to the defendant was $5,000. The referee made no al-
lowance to the defendant for its damages sustained in consequence
of the improper construction of the boilers furnished by the plain-
tiffs to the defendant under the contract, although finding that said
boilers did not propel said engine with the economy of coal consump-
tion that they would have done had they been constructed of the
same horse power as said engines, as they should have been under
the provisions of the contract. In this regard we conclude that the
referee erred, and hence, without considering other questions raised,
the judgment should be reversed, and a new trial granted; costs to
abide the event. All concur.