Grover, J.
No reply to the defendant’s answer, setting up the defence of usury, was necessary, the action having been commenced after the amendments of the Code in 1852 took effect.
The payment of the defendant’s checks, drawn for Western and Canada currency, by the plaintiff, in such currency, was not a violation of the statute against usury. No agreement whatever between the parties in relation to these checks is found by the referee. The facts found are, that the defendant drew the checks payable in Western and Canada bank bills; and that they were so paid by the plaintiff; and that such bills, although received at par by merchants and others in the course of busisiness, were not bankable at Buffalo, and were not received by the plaintiff, in his business as a banker, at par; but that there was no agreement between the parties that the checks should be so drawn.
The referee finds that the Exchange Bank of Buffalo is an individual bank, owned by the plaintiff, and the defendant’s counsel insists that the referee erred in allowing to the plain *39 tiff the amount of the checks drawn and paid in Western and Canada currency," and relies upon section 3, chapter 355 of Laws of 1839. This section provides, in substance, that no banking institution within this State, nor any association, nor any individual or individuals authorized to carry on the business of banking, by virtue of the act to authorize the business of banking, shall, directly Or indirectly, lend or pay out for paper discounted or purchased by them, any bank bill or note or other evidence of debt which is not received at par for debts due to such banking institution, association or individual. Section 4 of said act imposes a penalty of $1,000 for each violation of the provisions of section 3. It is clear that nq "" recovery can be had for money loaned in violation of the above provisions of the statute. But the answer of the defendant did not interpose this defence. It was a defence consisting of new matter, and by the provisions of the Code, could only be made available by answer to the plaintiff’s complaint. No amendment of the answer by the referee can be presumed, because, at the time the cause was tried (1853), the referee had no power to amend: No waiver of the objection, by the plaintiff can be presumed, because all the evidence I introduced by the defendant upon this point was admissible ’ upon the question of usury. The defendant cannot, therefore, avail himself of a defence upon this ground upon appeal.
The only remaining question arises upon the objection of the defendant that the plaintiff had not shown himself the owner of the checks drawn upon the bank and the note payable to it. This depends upon the question whether an individual banker is a corporation. If so, the checks and note were the property of the corporation, and the plaintiff could not recover in his individual character. An individual banker must be a corporation sole, if one at all. A corporation sole, as defined by Kent (2 Com., 273), consists of a single person who is made a body corporate and politic in order to give bim some legal capacities and advantages, and especially that of perpetuity, which, as a natural person, he cannot have. The successor takes the corporate property and privileges. A cor *40 poration, as defined by Chief Justice Marshall (Dartmouth College v. Woodward, 4 Wheat., 636), is “an artificial being, invisible, intangible, and existing only in contemplation of law. Being the mere creature of law, it possesses only those properties which the charter of its incorporation confers upon it, either expressly or as incidental to its very existence. Among the most important are immortality and, if the expression may be allowed, individuality; properties by which a perpetual succession of many persons may be considered as the same, and may act as a single individual.” The general banking law confers certain privileges upon individual bankers, but nowhere in express words declares them corporations. It does not confer upon them any one essential requisite of a corporation. It is true that some of their franchises are common to banking corporations. Their notes may be circulated as money. They may transact .the usual business of such corporations. All this any individual might lawfully do, but for the restraining'acts. It is entirely competent for the Legislature to impose upon individuals all the restrictions, in transacting other business, to which individual bankers are subjected by the act. It is not necessary to the validity of any of those restrictions to hold them corporations.
There is no provision made for succession. By section 7, chapter 189 of Laws of 1857, the right of the heir-at-law or the legatee of the banker to continue the business is recognized, and a legislative construction is put upon section 9 of chapter 242 of the Laws of 1854, by which the banker is still enabled to sell and transfer his banking business to his partner, in good faith. By the latter section the right of sale and transfer of the business, with its privileges, is restrained. All these provisions, I think, show, that in the opinion of the Legislature, the banker is not a corporation. , While this would not be conclusive in a clear case, it is entitled to consideration in a doubtful one. I cannot conceive this a doubtful question. I can discover no reason in the powers conferred by the act upon individual bankers, or in any of the restrictions imposed, for holding them corporations. The business of *41 banking by an individual, by whatever name it may be carried on, is, to all intents and purposes, his personal and individual affair, as much as any other transactions in which he may be engaged. Suits in relation thereto are rightly prosecuted in the individual name of the banker.
The judgment should be affirmed.
Strong and Gray, Js., expressed no opinion; all the other judges concurring,
Judgment affirmed.

/