NORMAN B. FOOT, Respondent, *v.* NORMAN S. BENTLEY and CHARLES W. BURTON, Appellant.

Where a sale of merchandise (exceeding fifty dollars), with warranty, is made verbally, upon credit, the quantity not being then ascertained, and the vendor afterward forwards a written bill of sale thereof stating quantity and price only, and subsequently ships the goods to the purchaser, the whole transaction becomes an executed contract of sale, with warranty, as of the time when the goods are shipped.

Letter-press copies of correspondence are not in any sense originals, but must be proved as other secondary evidence.

(Argued September, 29th; decided December 29th, 1870.)

APPEAL from an order of the General Term of the Supreme Court, in the fifth district, affirming a judgment in favor of the plaintiff upon trial before Mr. Justice FOSTER, without a jury.

In March, 1863, the defendants were doing business in the city of New York as wholesale merchants of teas and sugars, etc. Their traveling agent on the 19th of that month, called on the plaintiff at his place of business in Rome, Oneida county, with various samples of tea belonging to the defendants for sale, one of which the plaintiff examined. The agent did not know how many packages of that kind the defendant had for sale, but supposed it to be from ten to seventeen packages, all of which the agent represented to be sound; and warranted it to be better than the sample. The plaintiff thereupon verbally agreed to purchase it at ninety-

five cents per pound, on a credit of four months, with the understanding that the tea should remain in New York until canal navigation, unless he should sooner order it to be shipped. Soon after the agreement was made the defendants transmitted to the plaintiff what they denominated an invoice of the tea made by their entry clerk as follows:

"NEW YORK, *March 21st*, 1863.

"Bought of Bentley & Burton, fourteen half chests of Y. H. Tea," stating the quantity in each package, which, with thirty-eight cents cartage, amounted to $742.28, "at four months." Subjoined to this memorandum or invoice was written in pencil, "stored and insured free until river opens." The insurance was not in pursuance of any bargain with the defendants, but was so noted to inform the plaintiff that it was free of charge. It was not in fact moved from the position in which it was before the purchase, nor was it insured for the plaintiff but held, according to the defendants' supposition, under their policy of goods sold and not delivered. Two days following, and on the 23d of the same month, the plaintiff transmitted to the defendants his note at four months from the 21st of March, 1863. On the 23d of April following the defendants, in pursuance of the plaintiff's order of the 15th of that month, shipped the tea to the plaintiff, who received it in store at Rome on the 9th of May, where it remained until about the 20th of June next following, without an effort on his part to discover whether or not it was like the samples. It was then for the first time ascertained to be unsound, and not worth as much as it would have been, if it had been in all respects as warranted, and so the court found the fact to be; and that the plaintiff had for that reason sustained damages amounting in the whole to $430.10. In the course of the trial and after it had appeared that the bill of the 21st of March had been transmitted to and received by the plaintiff, and that he had given his note and order and received the tea, he offered to establish by parol a warranty of the tea beyond showing that it was not equal to the sample, which was objected to by the defendants. The objection was

overruled and the defendants excepted. Material parol evidence upon that point was then given. The plaintiff then offered in evidence two letter-press copies of letters addressed by him to the defendants upon the subject of the quality of the tea, each of which was objected to, on the ground that no notice had been given to produce the originals. The objection was overruled and the defendants excepted. The letters were read in evidence and in connection with the defendants' answers to them were material as to the value of the tea. The defendants moved that the plaintiff be nonsuited upon the ground:

1st. That there was no contract consummated until the memorandum called an invoice was sent and accepted; that it was the evidence of the contract between the parties, and that in it there was no warranty or representation in reference to the teas.

2d. That the plaintiff should have examined the tea, and if it did not correspond with the sample should have returned it, but having retained it, and sent his note in payment, he could not recover.

The motion was denied and the defendant accepted. The court found that a warranty was established by the evidence; that the tea was not as warranted, and that the plaintiff had, for that reason sustained $430.10 damages, and ordered judgment for that amount. From the judgment entered upon this order the defendants appealed to the General Term where it was affirmed. The defendant appealed to the Court of Appeals.

*Francis Kernan*, for the appellants, urged that the contract was executory until the tea was shipped, and title remained in the defendants. (*Shindler* v. *Houston*, 1 Comst., 261; *Ward* v. *Shaw*, 7 Wend., 404; *Russell* v. *Nicholl*, 3 Wend., 112; *Andrews* v. *Dieterich*, 14 Wend., 31; *Downer* v. *Thompson*, 2 Hill., 137.) Plaintiff was, therefore, bound to examine the tea within a reasonable time, and notify defendant of any alleged defect. (*Reed* v. *Randall*, 29 N. Y., 358,

362–3; *Hargous* v. *Stone*, 1 Seld., 73.) The bill of sale is the evidence of the contract as concluded, and contains no warranty. (Chitty on Cont., 455, 6 Am. from 3d Lond. ed.; *La Farge* v. *Rickert*, 5 Wend., 187; *Mumford* v. *McPherson*, 1 John., 414; *Van Ostrand* v. *Reed*, 1 Wend., 424.) Letter-press copies are mere secondary evidence.

*D. M. K. Johnson*, for the respondent, on the general question, cited *Terry* v. *Wheeler* (25 N. Y., 520); Blackburn on Sales, 122, marg. p.; Chitty on Cont., 375, and note; *Kimberly* v. *Patchin* (19 N. Y., 320); *Lansing* v. *Turner* (2 John., 13); *Oliphant* v. *Baker* (5 Den., 379); *Tarling* v. *Baxter* (6 B. & C., 360); *Hind* v. *Whitehouse* (7 East, 558); *Phasants* v. *Pendleton* (6 Rand., 473); *Jackson* v. *Anderson* (4 Taunt., 24); *Damon* v. *Osborn* (1 Pick., 477). That the press copies should be regarded as primary evidence, he cited *Hubbard* v. *Russell* (24 Barb., 404); *Ivony* v. *Orchard* (2 Bos. & Pul., 39.)

Gray, C. One of the principal grounds relied upon by the appellant's counsel for the reversal of the judgments appealed from, is that the paper of March 21st, 1863, made by the defendant's entry clerk, stating the number of packages of tea bought by the plaintiffs, the total sum to which they amounted, and the plaintiff's subsequent order to forward the tea, being the only written evidence of the bargain, parol evidence of the warranty should have been excluded, or not considered. The answer is, that on the 19th of March, when the bargain was made, it was not known to the plaintiff, or the defendant's agent, how many packages of tea the defendants had of the kind indicated by the sample, all they had was included in the purchases. This paper simply afforded the information necessary to enable the plaintiff to forward his note for the proper amount at four months; beyond that it amounted to nothing more than an admission that a sale had been made; it did not effect one. (*Filkins* v. *Whyland*, 24 N. Y., 338, 341.) In *Jeffery* v. *Walton*

(1 Stark's Rep., 385), application was made to the plaintiff by the defendant's son, in defendant's behalf, for the loan of a horse, he answered, that he had none except a black horse who shied, that if he took him on hire he must be liable for all accidents ; on these terms the bargain was made at the rate of two guineas a week for six weeks ; after the bargain a memorandum was made by the plaintiff, and kept by him, in these words : " Six weeks, at two guineas a week ; " signed Walton, Jr. The horse shied, and in consequence was injured ; in a suit for damages the question was, whether parol evidence of that portion of the agreement, in which the defendant agreed to be liable for all accidents was admissible, and it was held, that inasmuch as the written memorandum regulated only the time of hiring, and the rate of payment, parol evidence was admissible to prove the agreement to be responsible for all accidents. In that case the price and time was known to both parties ; in this case the number of packages bought was not. The bill or memorandum referring evidently to what had been bought, simply stated the number, weight, and value at the price previously agreed upon to enable the plaintiff to transmit his note for the true amount. (See *Huson* v. *Henderson*, 1 Foster, 224 ; *Allen* v. *Pink*, 4 Mees. & Wels., 140, and 24 N. Y., 339.)

It was also objected, that, because the plaintiff did not, at the earliest practicable time after the tea was received in store, examine it, and, on account of its being of less value than the sample, offer to return it, he ought not to recover ; and in support of that proposition the case of *Reed* v. *Randall* (29 N. Y., 358) was cited. The facts in that case did not, as the court decided, constitute a warranty ; and it was disposed of upon that ground. In this case the warranty is found as a fact. No obligation, therefore, existed requiring the plaintiff to return, or offer to return, the property warranted. (*Muller* v. *Eno and others*, 14 N. Y., 597.) The remaining question arises upon the exception taken to the admissibility of the letter-press copies of the plaintiff's letters addressed to the defendants. We are of opinion that they were not in any

sense original papers, and were, in their character, copies to the same extent that other copies carefully compared would have been, neither of which could be read in evidence without first giving notice to produce the originals; and hence, in our judgment, the exception was well taken, and the judgment must, for that reason, be reversed.

Earl, C. This is an action for a breach of warranty in the sale of tea. Plaintiff recovered, and defendants appealed.

When did the sale become operative and valid? There was no compliance with the statute of frauds at Rome, when Cook, the agent of defendants, exhibited the sample and had the negotiation for the sale, and the tea was not changed or altered in any way in the city of New York. It remained there just as before, in defendants' storehouse, and covered by their insurance. Hence, there was no delivery of the tea until it was shipped in May, 1863. The sale was not consummated by the invoice sent March 21st, because that was not intended by the parties to embody the contract; and it was not " subscribed," as required by the statute. (26 Wend., 339.) The sale, therefore, was consummated, and the contract of sale became valid and operative, at the time of the delivery of the tea and its acceptance in May, 1863; and it must be treated as if the entire contract was made upon that day. (5 N. Y., 37.) This must then be treated as an executed sale with warranty; and the plaintiff was entitled to recover, without any offer to return the tea for any breach of the warranty.

But the court erred in receiving the copies of the two letters, dated June 20 and June 22, 1863. The fact that a party keeps letter-press copies of letters, does not obviate the necessity of producing the originals, or of laying the foundation in the ordinary and usual way for secondary evidence. For this error the judgment should be reversed, and a new trial granted, costs to abide the event.

Judgment reversed, and new trial granted, costs to abide the event.