## The Sun Insurance Company v. James D. Earle and another.

*Insurance: Double insurance: Notice: Agent: Estoppel.* Whether notice by letter to the agent of the company that subsequent additional insurance had been procured, and subsequent conversations between the insured and such agent, in which such additional insurance was mentioned and no objection raised by the agent, under the circumstances of this case, would operate to estop the insurers from defending upon the clause in their policy against additional insurance without consent:—*Quære ?*

*Notice: Letter: Reception: Contents: Evidence.* Where notice by letter of the additional insurance is sought to be shown for the purpose of parrying such defense, proof simply that the letter was left at the agent's office, in his absence, with a person there present who was not identified, is not sufficient, in the face of a denial by the agent and the company of any knowledge of the letter or that it was ever received, to warrant the reception of proof of its contents.

*Evidence: Admissibility: Question of law.* This preliminary question, whether the proof sufficiently established the receipt of the letter by the agent or the company, to admit of evidence of its contents on a failure of the defendants to produce it on demand, which was incidental to the main question of the admissibility of a letter-press copy offered in evidence was, under the circumstances of this case, one for the court and not for the jury.

*Heard May 7.      Decided July 8.*

Error to Kent Circuit.

*Joslin & Kennedy,* for plaintiff in error.

*Norris, Blair & Kingsley,* for defendants in error.

GRAVES, CH. J.

This is a writ of error brought to reverse a judgment

of the circuit court for the county of Kent, which the defendants in error recovered on a policy of fire insurance issued to them by the company.

The defendants in error were partners, and owned and ran a quantity of machinery situated in a building belonging to one Earle, in Grand Rapids. The property seems to have been worth from twelve to thirteen thousand dollars. On the 8th of March, 1872, Earle applied to one Crosby, an insurance agent at Grand Rapids, for five thousand dollars insurance. Crosby issued a policy in the Manhattan insurance company for two thousand dollars, and on behalf of defendants in error, and with their assent, applied to another agent by the name of Atwater for insurance to the amount of three thousand dollars more. Atwater thereupon issued a policy for two thousand dollars in the Westchester fire insurance company and also the policy in suit for one thousand dollars. All these policies were dated March 8th, and appear to have been year policies and contemporaneous. Those issued by Atwater were handed to Crosby a few days after they were made out, and he attended to paying the premiums. The policy in suit contained the following clause: "If the assured shall have, or shall hereafter make any other insurance on the property hereby insured, without the consent of this company written hereon, then and in every such case this policy shall be void."

Permission was indorsed for four thousand dollars additional insurance, which was meant probably to preclude question about the simultaneous insurance in the other companies.

In the succeeding May the defendants in error bought and added to their machinery a knitting machine which they claim to have been worth three thousand dollars. They then conceived it to be expedient to obtain two thousand five hundred dollars additional insurance, which would raise the total of insurance on the machinery from five thousand to seven thousand five hundred dollars. Acting on this view,

they procured to be issued on the 12th of June by Innes & Dewey, also local agents, a policy for two thousand five hundred dollars in the American Central insurance company.

This policy was received by defendants in error on the 13th of June, and about the same time the other policies were handed over to them by Crosby, they having continued in his possession hitherto from the time they were issued. No written permission other than that before mentioned was ever indorsed on the Sun policy, and no claim is made that the permission for the four thousand dollars additional insurance had any application to the insurance for two thousand five hundred dollars last effected.

On the first of January, 1873, and within the year, the property was destroyed by fire, and the defendants in error made the usual preliminary proofs of loss and demanded payment. But the company refused and insisted that the policy was avoided under the before mentioned clause as a consequence of the insurance in the American Central company without the required permission.

The facts of which the foregoing are an outline are not understood to have been controverted.

The real contention at the trial concerned the ground assumed by the defendants in error to parry the defense which the company based on the clause against additional insurance. That ground was substantially and finally that the company were estopped from setting up the defense in question. The material testimony relating to this aspect of the case was given by Mr. Earle on the part of the assured, and by the agent, Mr. Atwater, on the part of the company, and in all important points these witnesses contradicted each other. The theory of the assured was that they had no actual knowledge that the policy required written permission to be indorsed before obtaining additional insurance, and that Atwater well knew beforehand their purpose to get further insurance, and talked with them about furnishing it; that after it was obtained he was fully

advised about it, and at all times acted as though the poli-
ey remained in force; that as a natural consequence of
this course on the part of Atwater, and of this state of things,
they were led to believe that the policy was regarded by
the company as obligatory, and hence were influenced and
led to rely upon it and to refrain from taking other steps
by insurance or otherwise to avert loss.

The testimony of Mr. Earle was directed to involve
Atwater in declarations and conduct tending to maintain
this theory, whilst the testimony of Mr. Atwater was chiefly
in contradiction of Mr. Earle. The latter testified, in sub-
stance, that after it was decided to make the additional
insurance of two thousand five hundred dollars, he applied
to Atwater therefor, who replied that he would endeavor to
get it in some company for which he was agent; that he
(Earle) had two or three conversations with Atwater on the
subject, but finally insured through Mr. Innes in the Ameri-
can Central; that shortly after this he personally advised
Atwater of the fact, and at length left a letter representing
what had been done, at Atwater's office; that Atwater never
intimated any objection to additional insurance, or hinted
that it would avoid the Sun policy; that he did not say
in so many words that the Sun policy would continue good,
but simply made no objection. He further stated that he
left the letter at the office with a young man he did not
know, and had never seen it since. He also testified that
he had a letter-press duplicate of the letter. At this point
the company were requested to produce the letter, but they
denied having received it. The duplicate, which bore date
June 12th, 1872, was then offered in evidence. This was
objected to on two grounds: *first*, that the original had
not been traced to the possession of Atwater; and, *second*,
that it purported to have been written subsequent to the
additional insurance. The counsel for the company also
claimed the right to give evidence that Atwater never
received the letter, and this was granted. Atwater denied

29 MICH.—52.

having received it. The court overruled the objection and the letter-press copy was read to the jury, as follows:

"GRAND RAPIDS, June 12th, 1872.

"*L. R. Atwater, Esq., Ag't, city:*

"SIR—We have succeeded in placing the additional insurance as wanted ($2,500) on machinery in the American Central Ins. Co., which will be all we care to carry at present,—in all $7,500.

"What will the rate be on stock contained in same building? If not too high, we may want some 2 or $3,000.

"Yours, etc., EARLE & REYNOLDS.

| | |
|---|---:|
| "Manhattan | $2,000 |
| Westchester | 2,000 |
| Sun | 1,000 |
| Am. Cent | 2,500 |
| | $7,500" |

Mr. Earle further testified that all the policies were left with the agents; that he had not seen them when the insurance in the American Central was obtained, and was not aware that further insurance was required to be indorsed; that he wrote the letter at the mill and left it, because he had before called to see Atwater and failed to see him.

The counsel for the assured were allowed to ask the witness, against an objection, whether he had conversation with Atwater after getting the insurance through Innes, and instead of giving a simple negative or affirmative reply, the witness proceeded to say that he had a conversation with Atwater about all the insurance; that he stated to him that they had seven thousand five hundred dollars insurance on the machinery; that it was then understood between them that the Sun policy was in force and that the American Central existed; but that Atwater did not say in so many words that the Sun policy was in force or that the American Central policy then existed.

Mr. Atwater explicitly denied having had any talk what-

ever with Earle about insurance until after the fire, and he further stated that all the negotiations and business he had in relation to insurance of property of defendants in error were exclusively with Crosby, who assumed to represent them.

We may now look, before going further, at the questions on admitting evidence; and the point first to be considered is upon the exception to the admission of the letter; and whatever view the other questions might lead to on the present record the judgment cannot be sustained unless that objection can be overcome. The theory on which the case was tried, and on which it was given to the jury, gave to the evidence afforded by the letter a degree of materiality and influence, and if it was erroneously admitted it is quite impossible to say that it had no effect upon the result.

In passing upon the exception it will be sufficient for the present purpose to examine the first ground of the objection. And it was not that the particular paper shown was a letter-press copy or any copy; but it was in substance that there was not then, and never had been, in any proper sense an original at all. It is important to keep clearly in view the specific issue between the parties at this point. The assured claimed that they warned the agent of the company by letter of the additional insurance. The company denied the reception of the letter, and consequentially the imputed warning; and if the letter never was received it never had any effective existence at all and was not entitled to be proved in any way.

The burden of proof was, then, upon the assured to show, *first*, that such a letter actually went to the agent, and if it did, then, *second*, what it contained. Both were to be affirmatively made out by the assured. Both were indispensable. But until it was properly shown that the letter reached the agent, it could not be competent to give secondary or any other evidence of its contents to the jury. Unless it was brought home to the other side it was mere

unpublished matter.   The assured held a letter-press copy, and. the course selected was to give evidence to the court of the existence of the original production, that it went into the possession of the agent and was under his control, and then,. on failure of the company to produce it on request, to prove its contents by the copy.   This scheme was regular.—*Moulton v. Mason, 21 Mich., 364; Foot v. Bentley, 44 N. Y., 166; Laxton v. Reynolds, 28 E. L. & E., 553; Life and Fire Ins. Co. v. Mechanics' Fire Ins. Co., 7 Wend., 31; Allen v. Blunt, 2 Wood. & M., 121; Wood v. Gassett, 11 N. H., 442; Page v. Page, 15 Pick., 368; Robinson v. Ferry, 11 Conn., 460.*

Was the proceeding legally carried out?   The evidence upon the point whether or not the letter had ever had any higher character than that of a mere monologue, whether it was received by Atwater and was in his possession so it could be produced, was, in the actual circumstances, for the court.   The object was to determine a preliminary and incidental point on which the admissibility of evidence on the main issue depended.—*Boyle v. Wiseman, 33 E. L. & E., 393, and cases before cited.*   No evidence of the contents of the paper, as already observed, could be regularly given to the jury in advance of the settlement of this preliminary question; and the course taken at the trial indicates that the parties so understood the practice.

Mr. Earle, as we have seen, had testified that he wrote the letter and left it at Atwater's office with a person he did not know, and this constituted the showing of the defendants in error, who had the burden of proof, to make out that the letter became an actual communication by having in truth reached Atwater, and also that it was in his hands when called for at the trial.   The person to whom Earle handed it was not called.   No explanation was given respecting him.   He was not identified.   No means were afforded to seek him out.   There was nothing tending to discriminate him, except that at the moment of Earle's call he was seen at Atwater's office, and when, it is

necessary to presume on the facts, Atwater himself was not there. Conceding the entire correctness of Mr. Earle's statement, the proof on the side of the defendants in error, that the letter ever reached Atwater, was at last made to depend upon an inference scarcely warranted. It was required to infer that from this unknown person, thus casually seen at the office, but who was not proved to have had any connection with it or with Atwater, the letter in some way or by some means got to Atwater. No relation between Atwater and this person was shown which might assist to an inference, and no credible estimate of probabilities is perceived which would fairly allow the fact sought for to be deduced or inferred from the facts shown. No circumstance or condition is indicated to raise a likelihood that because the letter was left with the stranger it reached Atwater.

From this unsatisfactory showing on the side of defendants in error, we pass to Atwater's testimony on the same subject. He did not contradict Earle's statement about writing and leaving the letter. He confined himself to the fact attempted to be inferred, his reception of the letter. He merely denied that he ever received it. There was here no necessary conflict. There was no real incompatibility. The testimony on each side may have been strictly true. The supposed inference, if admissible at all, was not a necessary one, but was open to contradiction, and even in the best view it could not be considered so cogent as to react against the credit due to Atwater's denial. He simply denied the fact sought to be raised by equivocal inference, and if both witnesses testified truly on this subject and as the fact was, as it is needful to presume they did, then the supposed inference, if indeed the facts were adequae to give rise to it, was completely repelled. In any view, then, the defendants in error failed in maintaining the affirmative of the interlocutory issue, and consequently there was no legal ground for letting in any kind of proof to the jury of the contents of the letter.

On account of the error in admitting this evidence, we are constrained to reverse the judgment. The other points noticed on the argument, if they should arise again, will not be likely to come up in a shape to expose them to the same considerations to which they are possibly subject as now presented.

To save possible misapprehension it may be well to add that no assumption must be made that the court would deem the answer attempted by defendants in error to the defense based on the clause against additional insurance as complete and perfect, even if all the circumstantial matters mooted to fill up and sustain that answer were fully established. We refrain from going into that question now, because the case is not ripe for it, and because another trial, as before intimated, may give rise to a very different basis for judgment.

The judgment must be reversed, with costs, and a new trial ordered.

The other Justices concurred.