JOHN E. BLACKMAN, Appellant, *v.* ELSWORTH L. STRIKER et al., Respondents.

142    555
77 AD⁴451

An exception or reservation in a deed is to be taken most favorably to the grantee, and if there is uncertainty or ambiguity in the language he is entitled to the benefit of the doubt.

A deed must be held to convey all the interest the grantor has in the land, unless the intent to pass a less interest appears by express terms, or is necessarily implied from the terms of the grant.

Prior to 1782 the heirs of J. who, as such, were tenants in common of a farm, which was within the corporate limits of the city of New York, entered into an agreement for the purpose of partitioning the same, pursuant to which the farm was divided into parcels, one of these contained a family burying ground lot. One parcel was allotted to each of the tenants in common, and partition deeds were executed. The agreement provided that the burying ground lot should remain and continue the family burying ground, and whoever of the tenants in common should take the parcel containing the same, and should thereafter sell, should reserve said lot in the deed to the purchaser for the purpose specified, "with full liberty to pass and repass as occasion shall require." In 1782 M., one of the tenants in common to whom said parcel was allotted, conveyed the same by deed to another party to the agreement, which deed contained a clause "saving, excepting and reserving" to the heirs of J. the burying ground lot, "with free ingress, egress and egress into, out of and from the same, to bury the dead, etc., forever." No burials were made in the lot after 1840. Said parcel remained intact until 1885, when it was divided, and immediately thereafter the owner of the portion containing the burying ground took possession, removed the remains of the dead buried there, and proceeded to erect a building. In 1889 the heirs of M. conveyed to plaintiff all their right, title and interest in and to the lands of which J. died seized. In an action of ejectment to recover said burying ground lot, *held,* that

M. intended to and did convey the fee of the parcel allotted to him subject only to an easement in said lot for burial purposes; that, therefore, plaintiff failed to show a legal title, and was not entitled to recover.

(Argued April 20, 1894; decided June 5, 1894.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made December 28, 1892, which denied a motion by plaintiff for a new trial, overruled his exceptions and directed judgment in favor of defendants upon the verdict directed by the court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*George Hoadly* for appellant. Plaintiff is entitled to a judgment of reversal and to recover the possession of the property upon a new trial, unless the exception in the deed of Matthew Hopper to John Hopper (the younger) failed to take effect as such. (*Munn* v. *Morrall*, 53 N. Y. 44; *Benson* v. *M. Bank*, 20 Penn. St. 370; *Corning* v. *T. I. & N. Factory*, 40 N. Y. 191; *Marvin* v. *B. I. M. Co.*, 55 id. 549; 1 Greenl. on Ev. §§ 141–143.) The deeds to plaintiff are not void for champerty. (*Crary* v. *Goodman*, 22 N. Y. 170; *Danziger* v. *Boyd*, 120 id. 628; *Sands* v. *Hughes*, 53 id. 295; *Pearce* v. *Moore*, 114 id. 259; *Brown* v. *Bigne*, 21 Oreg. 260; *Wynehamer* v. *People*, 13 N. Y. 378; *Bartemeyer* v. *Iowa*, 18 Wall. 129; *Forster* v. *Scott*, 139 N. Y. 577.)

*George Bliss* for respondents. Plaintiff must recover, if he recover at all, on the strength of his own title. He can take nothing from alleged defects in defendant's title. (*Roberts* v. *Baumgarten*, 110 N. Y. 380; *Sweet* v. *B., N. Y. & P. R. Co.*, 79 id. 293.) Whether we take the language of the agreement of the heirs or that of Matthew Hopper's deed, there is nothing more than a conveyance of the fee of the property subject to a right of burial; an easement. (*Grafton* v. *Moir*, 130 N. Y. 470; *Provost* v. *Calder*, 2 Wend. 517, 523; *Dygert* v. *Matthews*, 11 id. 35; *Thompson* v. *Gregory*, 4

Johns. 81; *Pollock* v. *Cronin*, 12 How. Pr. 363; *Bridges* v. *Pierson*, 45 N. Y. 603; *Walrath* v. *Redfield*, 18 id. 457; *Hornbeck* v. *Westbrook*, 9 Johns. 73; *Ives* v. *Van Auken*, 34 Barb. 566.) The deeds under which plaintiff claims are absolutely void under the Champerty Act (1 R. S. 739, § 147). (*Crary* v. *Goodman*, 22 N. Y. 170; *Pierce* v. *Moore*, 114 id. 256; *Becker* v. *Church*, 115 id. 562; *Church* v. *Schoonmaker*, 115 id. 390; *Dawley* v. *Brown*, 79 id. 570; *Livingston* v. *P. I. Co.*, 9 Wend. 513; *Christie* v. *Gage*, 71 N. Y. 189; *Whitney* v. *Wright*, 15 Wend. 172; *Jackson* v. *Elston*, 12 Johns. 452.) The plaintiff presented no evidence by which he could obtain a judgment in ejectment, for he did not define the *locus in quo* in such manner that it could be described or that possession of it could be given by the sheriff. (*Drew* v. *Swift*, 46 N. Y. 207; *Wendell* v. *Jackson*, 8 Wend. 183; *Jackson* v. *Camp*, 1 Con. 605.) This court has no jurisdiction of this case, and should dismiss the appeal. (Code Civ. Pro. § 1339; *Reinmiller* v. *Skidmore*, 59 N. Y. 861; *Cowenhoven* v. *Ball*, 118 id. 231; *People* v. *Featherly*, 131 id. 597.)

O'BRIEN, J. This was an action to recover real property. The trial court directed a verdict for the defendants and the General Term has affirmed the judgment entered on the verdict. The land which is the subject of the controversy is particularly described in the complaint, and is situated at the corner of Ninth avenue and Fiftieth street, in the city of New York. John Hopper the elder, who died in the year 1778, is the common source of title. He was the owner of a farm, in what is termed in his will and in subsequent conveyances, the Out Ward of the city of New York, which he devised to his five children and the descendants of a deceased child. The will directed that after his decease the farm should be divided into six equal portions by competent and disinterested persons, after having made a survey and chart of the farm and the several divisions. The parcels thus surveyed and mapped were to be so arranged, with reference to value, as to make all as

nearly equal as possible, and then the devisees were to deter-
mine by lot which parcel should belong to each in severalty.
This was to be done by numbering the six parcels on the map
and placing each number upon a ticket. and, in the language
of the will, each devisee was to "draw one ticket, and the
number thereon should be the number of the lot he or she
shall inherit by the devise." The drawing was to be done
under the direction of the executors of the will. The children
of the deceased child were entitled to draw and hold as tenants
in common one of the lots so numbered. On the 4th of Feb-
ruary, 1782, the devisees, including the guardian of the minor
grandchildren, entered into an agreement in writing under
seal, whereby it was agreed that the farm should be divided
into lots on the east and west side of the Bloomingdale road,
which ran through the property, that is to say, six parcels on
each side of the road, and it then provided that a parcel on the
east and one on the west side should be matched and repre-
sented by a number on the map, and consequently by a single
ticket at the drawing. The parcel which was designated on
the map as lot No. 2 contained the family burying ground, a
small plot surrounded by a fence, the area of which, for the
purpose of this case, may be stated as about forty feet in width
and eighty feet in length. This burial plot is supposed to be
the identical land in controversy, and parcel No. 2, upon which
it was located, was drawn by and allotted to Matthew Hopper,
one of the sons. After the division and allotment of the six
parcels between the devisees partition deeds were executed and
delivered by all the parties in interest to four of the devisees,
in which the parcel so conveyed is described in each case. but
the record does not show that any deed was ever executed to
Matthew Hopper or to the minor grandchildren. Whether
this results from the fact that no such deed was ever in fact
executed, or that the conveyances, if made, have been lost
without record does not appear. The absence of any proof of
the execution and delivery of such deeds is not, I think, mate-
rial on the question of title. The heirs of John Hopper the
elder took title in severalty to their respective allotments of

his estate by force of the devise to each contained in the will, the making of the map or chart directed by the testator, the execution of the agreement for the partition or division directed by the will, and the result of the drawing whereby each of the six shares were specifically described and located upon the farm. The evidence tended to prove, if it did not actually establish the fact, that the title and possession of that portion of the farm upon which the burying ground was located passed to Matthew under his father's will. On the 17th of February, 1782, Matthew Hopper and wife conveyed by deed, with full covenants, to his brother John Hopper the younger, the parcel which had been assigned to him, it being described in this deed by metes and bounds, and by reference to the partition map or chart, where it was designated as lot No. 2. This deed, however, contained the following clause, which is the foundation of this action. After describing the land and enumerating all appurtenances, actual or reputed, this language is used : " Saving, excepting and reserving unto the heirs of the said John Hopper of the Out Ward, deceased, and to their and each of their heirs out of this present demise, all that certain burying ground now in 'fence consisting of forty-eight feet square parcel of the said lott of ground and commonly called the family burying ground, with free ingress, egress and re-gress into, out of and from the same to bury the dead, &c., forever."

The plaintiff claims that under this clause the fee in the burying ground remained in Matthew Hopper and descended to his heirs, who have conveyed to the plaintiff, while the defendant claims that the fee passed to John Hopper the younger, by the deed, subject to an easement for burial purposes, and to the defendant, one of his descendants. John Hopper the younger, grantee in this deed, died in the year 1819, having disposed of all his property by will. This parcel remained intact down to the year 1885, though no burials were made in the plot subsequent to the year 1840. The defendant is one of the descendants of John Hopper the younger, and in an action of partition brought in 1885, a parcel of land, which

included the burial plot, was assigned and allotted to him by
the report of the commissioners and the judgment in the
action.  Immediately after this partition the defendant took
possession of the land in question, removed the remains of the
dead buried there, and the fence, and proceeded to erect an
expensive building on the ground.  The will of Matthew Hop-
per was admitted to probate September 25, 1784.  There is
nothing in it to indicate that he supposed he had, at the time
of executing the will, which was the same year in which it
was admitted to probate, any interest in the land in question.
He made no reference to it either by specific devise or general
clause, and if he had any interest after the deed to his brother,
he died intestate as to such interest.  In the year 1889 his
heirs conveyed to the plaintiff all the right, title and interest
in and to all lands which John Hopper the elder died seized
or possessed of in 1778, or which he devised by his will.  The
vital point in the plaintiff's case is involved in the construction
which should be given to the clause in the deed from Matthew
to John Hopper, since he cannot succeed in the action unless
it be held that the fee in the burial lot remained in the
grantor and did not pass to the grantee.  The learned counsel
for the plaintiff contends that by the language of the deed
the burial lot was expressly excepted from the operation of
the grant and did not pass.  It must be admitted that if the
solution of this question depended entirely upon the language
of the clause quoted, it would be very difficult to answer his
argument.  A conveyance of land, like all other instruments,
should be so construed as to effectuate the intention of the
parties to be ascertained from the language and all the sur-
rounding circumstances.  (*Thayer* v. *Finton*, 108 N. Y. 394;
*Beach* v. *Crain*, 2 id. 86–93.)  An exception or reservation
in a deed is to be taken most favorably to the grantee, and if
there is uncertainty or ambiguity in the language, he should
have the benefit of the doubt or the ambiguity.  They should
be taken most strongly and construed most strictly against the
grantor whose words they are and against him who stands in
his place, and if an advantage can be gained from an uncer-

tainty or ambiguity in the words, the grantee or person standing in his place is entitled to the benefit of it. (*Grafton* v. *Moir*, 130 N. Y. 470 ; *Jackson* v. *Hudson*, 3 John. 375 ; *Provost* v. *Calder*, 2 Wend. 523 ; *Jackson* v. *Gardner*, 8 John. 394 ; *Ives* v. *Van Auken*, 34 Barb. 566 ; *Borst* v. *Empie*, 5 N. Y. 39, 40 ; *Duryea* v. *The Mayor, etc.*, 62 id. 592 ; 4 Kent's Com. 468 ; *Craig* v. *Wells*, 11 N. Y. 315.)

The primary rule of construction applicable to a clause in a deed in the form of an exception or reservation is to gather the intention of the parties from the words, by reading not simply a single clause, but the entire context, and, where the meaning is doubtful, by considering such surrounding circumstances as they are presumed to have considered. (*Clark* v. *Devoe*, 124 N. Y. 120.) The deed must be held to convey all the interest in the lands which the grantor had unless the intent to pass a less estate or interest appears by express terms or be necessarily implied in the terms of the grant. (1 R. S. 748, § 1.) The grantor in framing the clause under consideration used the words " excepting and reserving " evidently without regard to their technical legal significance.· Whatever his intention was these words could not well be used together, since they express wholly different if· not antagonistic ideas. Their meaning was thus tersely stated in this court by Judge SELDEN :

" A reservation is always of something taken back out of that which is already granted, while an exception is of some part of the estate not granted at all. * * * A reservation is never of any part of the estate itself, but of something issuing out of it, as, for instance, rent, or some right to be exercised in relation to the estate, as to cut timber. An exception, on the other hand, must be of a part of the thing granted or described as granted, and can be of nothing else." (*Craig* v. *Wells*, 11 N. Y. 315.)

The exception or reservation was not in favor of the grantor himself, but in favor of the heirs of his father. The language is " unto the heirs of the said John Hopper of the Out Ward, deceased, and to their and each of their heirs," etc. The general rule is that a reservation or exception for the benefit

of a stranger or person not a party to the deed is void. (*Bridger* v. *Pierson*, 45 N. Y. 603 ; *Walrath* v. *Redfield*, 18 id. 457 ; *Hornbeck* v. *Westbrook*, 9 John. 73.) The grantor, however, was one of the children and heirs of John Hopper, and it was competent for him to reserve an easement for burial purposes for himself and the other heirs. The purpose of the right retained, whatever it was, is expressed in the last words of the clause, " to bury the dead, etc., forever." The real practical question is whether Matthew, by the use of these words, intended to retain in himself any beneficial interest in the land, or was it the intention of the grantor to convey all the estate that he had. The grant was for a valuable consideration, expressed in the deed to be £550 sterling, and the inquiry may be extended to John Hopper the younger, the grantee, whether he intended in making the purchase to acquire anything less than the whole estate which his grantor had. The agreement between the heirs which antedated the partition and the deed in question, contains a provision which reflects much light upon these questions. After describing each of the shares to be represented by a number on the map or chart, it proceeds as follows : " Whereas, on the lot number two there is erected a burial ground, and now inclosed with a good fence that the same forever hereafter remain, continue and be for the family burying ground, and that whoever shall draw said lot of ground, and should hereafter sell that, the said burying ground shall be reserved in the deed to the purchaser for the above-mentioned laudable purpose of burying, with full liberty to pass and repass as occasion shall require."

The purpose of this provision is plain. The heirs intended that parcel No. 2 should pass in fee to whoever drew it in the allotment, impressed with an easement for burial purposes. Matthew took it subject only to this easement which he was bound by the agreement to preserve in case he sold the share allotted to him. Matthew and John, grantor and grantee in the deed under consideration, were parties to this agreement. They understood its scope and purpose, and it is reasonable and just to presume that neither intended anything

BLACKMAN v. STRIKER et al. **563**

N. Y. Rep.]        Opinion of the Court, per O'BRIEN, J.

more by the clause in the deed than to carry out what had
been provided for in the prior agreement. There is no reason
to believe that the parties to the deed intended that the
grantor should retain any beneficial interest in the soil of the
burying ground plot. Matthew was bound to reserve the
right of burial for the heirs when he sold the parcel. He was
not bound to retain anything more, and the reasonable con-
struction to be placed upon the words of the grant is that they
were employed to limit the estate in the same way as it was
held by the grantor. He intended to convey all he had and
the grantee intended to acquire no less. This intention was
not expressed in clear or accurate language, but as it is appar-
ent from the nature of the transaction and from the circum-
stances, words and phrases used without a clear perception
of their true meaning, must yield to what appears to be the
intention. If we look at the conduct of the parties after the
execution of the deed this view is confirmed. More than a
century has passed since the conveyance and it does not
appear that Matthew or any of his descendants made claim to
any beneficial interest in the property, while John Hopper, the
grantee, and his descendants evidently supposed that they
owned the fee, subject only to an easement for the burial
of the dead. In a case like this, where the defendant in
possession has made valuable and expensive improvements
upon the property on the faith of a title more than a hundred
years old, the plaintiff is bound to make out a clear case. He
cannot rest upon the words of the deed alone. A court must
be fairly convinced from the language, read in the light of all
the surrounding circumstances, that Matthew Hopper intended
to retain in himself the fee of the burying ground, and that
the beneficial interest so retained has vested in the plaintiff.
A careful consideration of the whole case has not enabled us
to reach that conclusion, but, on the contrary, after considering
all that has been so forcibly urged by the learned counsel for
the plaintiff in support of his view, and without invoking any
arguments against the plaintiff's claim except such as seem to
be founded in reason, justice and law, we think he has failed

to show any legal title to the property. It is unnecessary to examine the other questions arising upon the record and discussed by counsel, since a decision of them either way would not affect the result.

The judgment should be affirmed.

All concur.

Judgment affirmed.