Sam Sesky, Respondent, *v.* Jolrane Realty Corp., Appellant.

Supreme Court, Appellate Term, First Department, January 27, 1938.

* Revg. 163 Misc. 206.

*Isidor Tankus* [*I. Maurice Wormser* of counsel], for the appellant.

*Meyer Levy,* for the respondent.

LYDON, J. The facts are stated in the dissenting opinion of FRANKTHALER, J. The question to be decided is whether the title tendered by defendant was reasonably free from doubt and, therefore, marketable. Title was rejected by the purchaser on the advice of its attorney. Insurance had been refused by one of the title companies. The objection raised does not seem to me a fanciful one.

The deed from Silver to his wife and the deed from Silver and his wife to Pecher were both acknowledged on the same day and were simultaneously recorded two days later. We do not know when these deeds were delivered or which of them was delivered first. If the deed from Silver to his wife of an undivided half of his property was delivered to her before the joint deed of Silver and his wife was delivered to Pecher, it would follow that after the delivery of the latter deed Silver and his wife each remained seized of an undivided fourth interest in the property. Up to the time of the tender of title to the purchaser in the present case Silver had not divested himself of that interest.

Judgment affirmed, with twenty-five dollars costs.

LEVY, J., concurs; FRANKENTHALER, J., dissents, with opinion.

FRANKENTHALER, J. (dissenting). Action by real estate broker to recover $750 commission for effecting a sale of defendant's property.

It is stated in the plaintiff's bill of particulars that after defendant and the purchaser had agreed on all the terms and there was a complete meeting of the minds, defendant exacted from plaintiff a written agreement to accept $750 in payment of his commissions, and further exacted that payment thereof was not to be made by the seller in the event that title did not pass.

Plaintiff, however, gave no proof of his claim that there was a meeting of the minds of the parties on all of the terms of the contract when the written agreement for commission was executed, and defendant's proofs establish the contrary fact.

The contract was drawn at the office of the attorney for the owner-defendant. It clearly appears that the brokerage agreement was there made a couple of hours before the purchaser and his attorney arrived. Thereafter the contract of sale was dictated, and then the amount of cash and other details were inserted by agreement in the brokerage contract.

It follows that plaintiff's recovery can only be sustained upon the written agreement, which provides: " The undersigned does hereby agree to accept the sum of Seven Hundred Fifty ($750.00) Dollars, in full payment for all commissions due in connection with the sale of the aforesaid premises; providing, however, that the undersigned agrees that such commission shall become due and payable to him only in the event that the purchaser pays and delivers to the seller the purchase price as agreed upon in the contract which will be entered into upon the signing of this agreement. If the purchaser does not take title in accordance with the terms of the contract to be entered into, then no commission is deemed to be earned by the broker."

The purchaser did not take title, so that unless the refusal to complete the contract was based on the default of the defendant, the seller, in failing to tender a marketable title, plaintiff was not entitled to recover, (*Amies* v. *Wesnofske*, 255 N. Y. 156.)

There were two objections to the title tendered by defendant.

A portion of the premises included in the contract is referred to as lot 221, and the purchaser's objections relate solely to that lot.

In the first place it was objected that the Federal receivers of the Liberdar Holding Corporation, a prior owner of the said lot, did not hold a public sale, as required in cases of judicial sale pursuant to sections 847 and 849 of title 28 of the United States Code.

But the Federal courts have decided that where the sale is not a judicial sale, notice and public sale are not required; and the sale that had been made by the receivers in this instance was not a judicial sale. (*Prudential Ins. Co.* v. *Liberdar Holding Corp.*, 6 F. Supp. 903; *Prudential Ins. Co.* v. *Land Estates, Inc.*, 19 id. 401; affd., 90 F. [2d] 457.)

The second objection was that Silver, a prior owner in the chain of title to said lot, had not transferred all his interest in the property.

Before the amendment of the Real Property Law abolishing inchoate dower Silver made two deeds with full covenants, each dated May 2, 1927, one of the deeds conveying an undivided one-half interest in the said lot to Silver's wife, and the other, in which the wife joined, conveying an undivided one-half interest in the property to one Pecher. Each of these deeds was acknowledged

before R. W. Pullman, notary public, May 14, 1927, and each was recorded in the register's office of Bronx county May 16, 1927, at two-forty-seven P. M. Thereafter the wife and Pecher conveyed the property to the defendant or its grantor.

Respondent claims and the majority of the court has sustained the contention, that as a possible result of the two Silver conveyances he and his wife each retained a one-quarter interest in the property, and the purchaser was accordingly justified in rejecting title. It seems to me there can be no reasonable doubt that there was a simultaneous execution and delivery of the deeds and that Silver divested himself of all interest in the land. Indeed the facts warrant the presumption that those conveyances are parts of one transaction (See *Stephenson* v. *Naumann*, 195 N. Y. Supp. 768; affd., 204 App. Div. 891; *Blackman* v. *Striker*, 142 N. Y. 555); and, as a result, under section 245 of the Real Property Law, all of the interest of the husband in the property passed to the grantees.

Defendant's title being a marketable one, refusal to complete the contract of sale may not be ascribed to the defendant, and the plaintiff failed to make out a cause of action.

The judgment should be reversed, with thirty dollars costs, and judgment directed for defendant, with costs.